LUKE MAY, Plaintiff in Error, *v.* ROBERT R. JENKINS et al.,
Defendants in Error.

### ERROR TO MORGAN.

Jenkins was insolvent; the father of his wife made an advancement for her
separate use, to be invested in such way that the creditors of the husband
could not reach it; there was no appearance of fraud in the transaction: —
*Held,* that the father of the wife had the legal and moral right to make such
advancement, and that no complaint could be made against such action.

THE cause was heard before WOODSON, Judge, at November
term, 1853, of the Morgan Circuit Court.

The opinion contains a history of the case.

M. MCCONNELL, for plaintiff in error.

D. A. SMITH, for defendants in error.

CATON, J. We think the decree in this case must be affirmed.
It satisfactorily appears, that the lot was purchased in the name
of the trustee, and the house built by him for the use of Mrs.
Jenkins with funds furnished by her father, for her sole and
separate use, and with the express intention and direction that
they should be so invested. Over four hundred dollars was
raised from the sale of the land in Woodford county, which
had been given to Mrs. Jenkins by her father, and for the pur-
pose of providing for her a separate estate; and two hundred
dollars in money was also sent out for that purpose. The
money raised from the sale of the land never passed into the
hands of Mr. Jenkins, but was received by the son, who sold
the land, and who held the title in trust, and was by him paid
over to Cooley; the two hundred dollars which Mrs. Jenkins'
father sent out for her was evidently received by Mr. Jenkins,
but he never assumed to own it or to exercise any control over
it in his own right, but loaned it out as the agent of Cooley the
trustee, and for the use of his wife. It was eventually paid to
Cooley, or was invested in the house and lot by his direction.
The house and lot cost probably something over one thousand
dollars. The father of Mrs. Jenkins certainly furnished over six
hundred dollars of this, besides accumulated interest, the amount
of which is not shown. There is still owing upon the house
and lot between three and four hundred dollars; showing means

9 *

furnished by her father, for the use of Mrs. Jenkins, approximately sufficient to pay for the house and lot.  It is true that a part of the contracts were made by Mr. Jenkins, but this was done as the professed agent of Cooley the trustee.  And it satisfactorily appears that Cooley paid Jenkins for his work on the house, the same as other mechanics.  We think it is not shown, that Jenkins has either funds or labor invested in this house or lot.

The case is simply this: Jenkins was insolvent.  In view of this fact, the father of Mrs. Jenkins makes an advancement for her separate use, with express directions to have it invested in such a way as to secure a home for his daughter, which should be beyond the reach of the creditors of her husband.  And the question is, Was that a fraud upon those creditors? was this a transaction, either on the part of the wife or her father, of which the creditors had any right to complain?  We think most clearly not.  Her father had both the legal and the moral right to do with his own as he pleased; and if he chose to give it to his daughter, instead of appropriating it to the payment of her husband's debts, he was but exercising a high moral right, of which no one can have cause to complain; and the courts should not be astute in seeking for trivial circumstances to thwart his intentions, where such intention has been uniform, and is clearly manifest from his whole course in the transaction. To apply this fund now to the payment of the husband's debts, which was originally and always designed by the donor to secure a comfortable provision for his daughter, in view of those very debts which might prevent the husband from making a suitable or comfortable provision, would be unjust in the extreme.  Those debts were never contracted upon the credit of this fund, or with the reasonable expectation that they would be paid by the father-in-law of the debtor; and the creditors ought not to complain, that he chose to provide for his daughter, rather than pay them and leave her destitute.  Where there is an attempt to cover up the actual property of the debtor, under the name of the wife, it is the right of the creditors and the duty of the courts to defeat such intention.  We are satisfied, however, that this is not such a case; and we are of opinion that the decree should be affirmed.

*Decree affirmed.*